RICHARD C. JENKINSON, surviving executor of George B. Jenkinson, deceased,

*v.*

NEW YORK FINANCE COMPANY et al.

[Decided December 30th, 1911.]

1. No decision should be made in an administration suit as to the share which certain persons not parties to the suit would take under a will.

2. Assignments of equitable interests in a fund held by a trustee being subject to the equities of the trustee arising before notice of the assignment, a loan wrongfully made to a legatee by a testamentary trustee from the trust funds, without notice of a prior assignment by the legatee of his interest in the estate, could be retained by the trustee from the amount payable to the legatee or his assignees, irrespective of whether the amount advanced was a loan to the legatee or an advancement from the share due him from the estate.

3. The loan of the funds of the estate by a testamentary trustee to a legatee upon his personal note when his interest in the estate was contingent was at the trustee's personal risk, being a wrongful use of the trust funds.

4. An assignee from a *cestui que trust* who is a debtor to the trust estate must discharge the debt in order to claim a beneficial interest in the fund assigned.

5. An executor and testamentary trustee who wrongfully loaned or advanced money to a legatee who had only a contingent future interest in the trust estate on his personal note will not be permitted to estop himself from afterwards retaining such amount from the amount due the legatee by any statements to the legatee as to the number of assignments then held by the trustee of the legatee's interest, without mentioning the amount advanced by the trustee, in reliance upon which a creditor took an assignment of a part of the legatee's interest; any remedy which the creditor had being against the trustee personally.

6. Notice by a prior assignee of an interest in a trust estate to the trustee is essential as against a subsequent assignee for value in good faith and without notice; the prior assignee's failure to give notice being negligence, which permits the assignor, through his apparent ownership of the trust fund, to defraud subsequent purchasers.

7. Legal interests in property are assignable by rules fixed either at common or statute law.

8. In absence of statute, the maxim, "The first in order of time is the strongest in law," applies to the successive assignments of equitable interests in land as well as to the transfer of legal interests.

9. The equitable doctrine of notice is not applicable to the conveyance of equitable interests in lands.

10. Legacies are purely equitable interests in their origin.

11. A trustee who makes payments of a beneficiary's interest from the trust fund either to the beneficiary or a subsequent assignee without notice of a prior assignment is protected as against a prior assignee.

12. In cases where a subsequent assignee merely stands in the shoes of his assignor, subject to his equities, as in case of an assignee under the insolvent laws, &c., a prior assignment is effective, without notice, against a claim of a subsequent assignee.

13. An assignment of a debt is valid by a delivery of the evidence of the debt without any writing, and any security would follow the debt in equity.

Heard on bill, answers, replication and proofs.

*Messrs. Coult & Smith,* for the complainant.

*Messrs. Collins & Corbin,* for the New York Finance Company.

*Messrs. Guild & Marlin,* for the defendant L. F. Robertson & Sons.

*Mr. Edward Q. Keasbey,* for the defendant Banes.

*Messrs. McCarter & English,* for the defendant Bernheim.

EMERY, V. C.

This suit is an administration suit, the bill being filed by Richard C. Jenkinson, the surviving executor and trustee of George B. Jenkinson, deceased, for an accounting and settlement in this court. The questions now to be determined relate to the interest of George B. Jenkinson, Jr., one of the children of the testator, in the residue of the estate, and the settlement of the priorities of defendants who claim as assignees of his share under assignments either of specified portions of the share or by way of charge or mortgage upon the share. A preliminary question

arises as to the amount of the share subject to the assignments by reason of the claim of the executor to deduct from the share a sum of $5,000 received by the legatee from the executor, with interest thereon. The defendants to the bill include George B. Jenkinson, Jr., against whom a decree *pro confesso* has been taken, and four of the defendants claiming as assignees under George B., viz., the New York Finance Company, who had two successive assignments each for $15,000 of the fund; the executors of Gustav Bernheim; L. F. Robertson & Sons, a corporation, and Robert O. Banes, to whom the New York Finance Company assigned its rights under the first of its assignments.

The Fidelity Trust Company, an assignee claiming under an assignment from the legatee, admitted to be prior to the executor's claim as well as prior to all of the other assignees above named, except L. F. Robertson & Sons, is also a defendant to the bill, and by an order in the cause, made by consent of all the other assignees, except L. F. Robertson & Sons, payment of their claim was made by the executor.

As to the preliminary question, the amount of George B.'s share, for which complainant as executor is accountable to them, it is contended that a sum of $5,000, which George B., Jr., received from the executor out of the funds of the estate, should not be deducted before paying the portions of the estate under the assignments. The facts bearing upon this issue, which is one partly of fact and partly of law, are as follows:

The testator made several specific devises and bequests, none of which are now material to be considered, except the third, eleventh, twelfth and thirteenth clauses. In the *third* clause of the will he directed his executors to invest or set apart from any investments he might hold at his death, a sum sufficient to pay to his wife $7,500 yearly during her life, and in lieu of dower. On her death these investments are, by the *twelfth* clause, to form part of the residuary estate. The widow, who is still living, accepted the provisions of the will, and has received the yearly payments as directed. The executors have not, however, set aside investments to pay the annuity, but by the consent of the residuary legatees, who were also the legatees of the excess over $7,500 of the income on the investment directed to be set apart, have

paid the annuity from the general income of the estate. Under the *thirteenth* clause—the residuary clause—George B. will be entitled to receive one-eighth of this fund, on the widow's death, if he be then living, but his share being contingent on his outliving the widow, no portion of this fund (or of so much as should be set aside therefor) is now applicable to any of the assignments, and under the residuary clause, a question may arise whether his interest therein is not contingent on his surviving the widow. The issue of George, to whom the share George would have taken if living at the time the share was to be paid, is given in case of George's death, are not parties to the suit, and no decision on this point should be made in their absence.

The three executors were authorized by the eleventh clause to sell all real estate, the proceeds of sale to form part of the residuary estate.

The residuary clause of the will is as follows:

"*Thirteenth.* I give, devise and bequeath all the rest and residue of my estate, including both real and personal (subject to the power of sale hereinbefore given), to my said son Richard C. Jenkinson, and my son-in-law, James T. Ball, and the survivor of them, in trust. nevertheless, and to and upon the uses and trusts following, that is to say, to invest and to keep invested my personal estate, hereby giving them full power to charge investments and reinvest from time to time in their discretion, and to take charge of and let my real estate until sold, and until such time to keep the same sufficiently insured and to make such necessary repairs thereto as they may think requisite, and to pay all taxes and charges against the same out of the income of my residuary estate, and then, first, to pay to each of my six children—Eliza J. Holmes, Charlotte A. Smyth, Fanny J. Taylor, George B. Jenkinson, Junior, Eleanor Jenkinson and Harry L. Jenkinson—the interest of thirty thousand dollars, at the rate of six per centum per annum in half yearly payments for the period of ten years after my decease, or until the decease of my said wife, if that shall occur within *that time;* and at the end of *that time,* or upon the decease of my said wife, if that shall first occur, to pay to each of my said six children the principal sum of thirty thousand dollars. If any of them shall have died leaving lawful issue. then to pay to such issue the share the one or ones so dying would have received if living; and if any of them shall so die without leaving issue. leaving a husband or wife surviving, then to pay to such husband or wife the sum of ten thousand dollars, and the balance of twenty thousand dollars of any such share to pay over to my surviving children and the issue of them who may have died, in equal shares, such issue to take the parent's share. In case any of my said six children shall die without leaving issue, or husband or wife *then* living. the share of such one to be paid

over as directed by the next subdivision of this clause; and second, to pay over the balance of my said residuary estate at that time, in equal shares, *to all my children then living,* and the issue, if any, of such of them as may have then died, such issue to take the share the parent would have taken if then living."

The testator died on January 30th, 1896, leaving a widow and eight children, all of whom are living and are parties to the suit. The widow was one of the three executors named by the testator, the complainant and James T. Ball, a son-in-law, being the other two, and the persons named as trustees in the residuary clause. The widow renounced the appointment of executrix, and James T. Ball died in January, 1898. The complainant, as surviving executor, and under the power of sale given by the will, has sold real estate as well before as after the expiration of the ten years fixed for the time of payment of the principal sums of $30,000 to the six of the eight children, to whom the balance of the residuary estate is to be paid, under the *second* subdivision of the thirteenth clause.

At the filing of the bill (January 28th, 1908) the executor had in hand as George's share the principal sum of the legacy $30,000, and the additional amount of $1,971.49, from which the executor claims a deduction or payment of $5,000 received by the legatee from the funds of the estate between January 23d and April 30th, 1904, besides interest. Up to January 30th, 1906, when the legacy of $30,000 was payable under the residuary clause, and up to the filing of the bill, the executor had received $112,950 as proceeds of sale of real estate, which under the will fell into the residue, and to one-eighth of which George is entitled. Since filing the bill the executor has received from proceeds of sales of real estate made up to June, 1911, the additional sum of about $171,877.50, to one-eighth of which George would be entitled. On October 14th, 1909, an order was made by consent in writing of all parties in the cause except L. F. Robertson & Sons, which, after reciting that the complainant had in his hands funds available to be distributed out of the share of George B. in excess of $60,000, and that the total claim of L. F. Robertson & Sons with interest would not exceed $7,000, directed the executor (after reserving from the funds in his hands distributable to the share of George

B., the sum of $7,000 to answer the claim of L. F. Robertson & Sons) to pay to the Fidelity Trust Company, claiming under an assignment dated December 28th, 1903, the sum of $40,000, with interest at 5 per cent. from December 28th, 1903 (the date of its trust deed or mortgage), less interest paid. The defendants, L. F. Robertson & Sons, under a previous assignment, executed on May 14th, 1901, claimed priority over the Fidelity Trust Company, whose trust deed or mortgage was admitted to be prior to all of the other assignments as well as to the claim of complainant to deduct the amount subsequently advanced to George with notice. After this payment to the Fidelity Trust Company, and after reserving a principal fund for the widow's annuity of $7,500, the funds in the hands of the executor applicable to the share of George in the residuary fund will not at this time exceed the sum of $30,000, without allowing for the retention of $5,000 and interest from January, 1904, to pay the legatee's note to the estate. The claims of the defendants under their assignments (not including interest), stated according to the date of the execution of their assignments, are: L. F. Robertson & Sons, May 14th, 1901, $4,000; the New York Finance Company, first assignment, assigned to defendant Bancs, $15,000, December 1st, 1904; New York Finance Company, second assignment, March 14th, 1905, $15,000; Bernheim's executors, $6,270.74, with interest from February 25th, 1903, assignment dated October 31st, 1905, to secure the judgment recovered February 25th, 1903, and made expressly subject to the two assignments to the New York Finance Company. Notice to the executor of the two assignments to the finance company was given on or about their respective date, by letter of the legatee formally notifying the executor of the sale, and authorizing him to pay over the amounts assigned out of his interest in the estate, when the same should become due and payable. Copies of these assignments were delivered to the executor on January 20th, 1906. Notice of the Bernheim assignment was given to the trustee on or about January 12th, 1906, by a letter of that date from Bernheim's attorneys, and on or about January 19th a copy was sent to the trustee. On or about January 26th, 1906, the

executor, through his attorneys, received from L. F. Robertson & Sons the first notice of their assignment, with a copy enclosed in their letter of that date.

The right of the complainant to retain the claim of the estate is disputed by the New York Finance Company and Banes, and the priority of the L: F. Robertson & Sons claim, first in order of time, but last in order of notice, is disputed by all the subsequent assignees, because of this failure to give notice and because their respective assignments were taken in good faith and for value, and without notice of the prior assignments. As between the assignees subsequent in date to Robertson & Sons, there is no dispute in relation to their respective priorities, which are determined both by the order of time as well as notice.

*First.* As to the right of the executor to first deduct from George's share the amount of $5,000 received from the executor and for which he holds George's note dated January 22d, 1904, payable on demand to the order of the estate, with interest at five per cent. As collateral security for the payment of this note the executor received an assignment of seventy-five shares of the capital stock of the corporation T. B. Peddie & Company, which has been declared insolvent since the filing of the bill. Nothing will be realized on the stock. It is contended on behalf of Banes that the transaction was an advancement to George on account of his share of the estate, but upon the evidence I conclude. that it was not an advancement, but was a loan by the executor.

It is also contended that if the transaction was a loan, it was a loan to George upon the personal security of his note, with collateral, and that there is therefore no right of retention from George's share in the funds of the estate as against his subsequent assignees. As the loan was made without notice of the previous assignment to L. F. Robertson & Sons, and was in fact made previous to all of the other assignments, the general rule, that assignments of equitable interests in a fund held by the trustee are subject to the equities of the trustee arising before notice of the assignment, would, in the absence of special equities, be of itself decisive as to the right of the executor to retain

from the amount payable to the legatee the amount due from the legatee to the trust estate. This general equity of the trustee to retain for payment would, I think, exist whether the loan was an advance on account of the legatee's share, or whether it was an independent loan of money of the estate to the legatee personally and for which it would have a set-off had George himself brought suit for the legacy. Considered as a loan, this transaction was a loan of moneys of the estate upon improper security, and as appears by the evidence, it was arranged between George B. and the executor, with the consent of the other children. It was probably made with the expectation that it would be repaid to the estate before any legacy became payable to George, as similar loans of larger amount had previously been paid. But inasmuch as George's right to the $30,000 was expressly contingent on his living until the time for payment, there can be no question that the loan of the estate funds was a breach of trust, and at the personal risk of the executor, who protected himself by securing the consent of the other children. Under these circumstances, neither George nor any person claiming under him, by assignment or otherwise, has any right to claim payment of his share under the will, except upon the terms of making good or accounting for the amount improperly taken. There can be no question, I think, that if George himself were claiming the legacy, the executor would be entitled to deduct the moneys received, and so far as the mere right to deduct by reason of the advance goes, there is no reason for making a distinction between George and those claiming under him. Their rights can be no greater than his.

An assignee from a *cestui que trust* who is a debtor to the estate cannot claim the beneficial interest without discharging the debt. *2 Lew. Trusts* *696. The right of the estate to be protected against breaches of trust by the trustee is enforced even to the extent of holding the assignment by a legatee who is also the trustee, to be subject to the liability of the trustee to make good all breaches of trust, as well after as before the assignment. *Morris* v. *Livil* (1842), *1 Y. & C. Eng. Ch. 380; Knapman* v. *Wreford* (1880, *C. A.*), *18 Ch. Div. 300.* As the

debt due from George to the estate was payable on demand, the equity of the estate for payment arose immediately and continued until the debt is paid.

The finance company and Banes, its assignee, claim, however, that special equities exist between them and the executor, which entitle them to insist that as against them, and because of the circumstances under which the assignments to them were made, the executor is estopped from claiming the right to retain, as against either the first assignment now held by Banes, or the second assignment. The facts relied on to sustain this claim of estoppel are these: George B. applied to the finance company to raise money by sale of a portion of his share in the estate. The attorney for the finance company desired a statement from the trustee as to assignments of which he had notice, and upon George, the legatee, stating that such inquiries, if made by him (the attorney for the finance company), would not procure the desired information, the attorney suggested that the legatee himself procure the information and turn it over to the finance company. George B. accordingly procured from the trustee the following letter to himself, which he afterwards delivered to the finance company:

"Dec. 1, 1904.

"*Mr. George B. Jenkinson, 2nd, South Orange, N. J.:*

"DEAR SIR—If it will be of any assistance to you and help you pay off the Bernheim claim and settle with the Newark Banking Company, I am very willing to state that to the best of my knowledge and belief the two assignments you made to the Fidelity Trust Company and the National Banking Company respectively are the only ones of which I have received a notice in writing, and beyond that the only other papers I recall affecting your interest in the estate, are those in connection with the suit of the Hamilton National Bank, by which I am restrained from paying you the annuity.

"Yours truly,

"R. C. JENKINSON, *Exr.*"

What statements were made by George B. to the trustee, upon the faith of which the letter was obtained, does not appear, but, as bearing on the question of estoppel, it will be noticed that in this letter there was no reference to the amount of any assignment proposed to be made, and it would appear from this letter that the executor supposed the money proposed to be procured by

the legatee by the assistance of his letter was to pay the Bernheim claim, $6,250 and interest, and that of the Newark Banking Company, the amount of whose claim does not appear, but who already had an assignment. The finance company, on the receipt of this letter from George, made their first purchase, paying $10,000 for a $15,000 portion of the estate, without further inquiry of the trustee or information to him about their proposed purchase. And in the following March (1905), without any further inquiry or information, it made the second purchase of $15,000, paying therefor $10,000. The assignments to the finance company formally transferred to the extent of $30,000, George's entire interests, legal as well as equitable, and either vested or contingent, under his father's will, including the legacy of $30,000. It is now claimed that by reason of the executor's omission to state in this letter that the estate held a claim arising out of the loan to George now in question, the executor and the estate he represents are now estopped from setting up the claim for retention against either the first or second assignment.

Considering this claim purely on the basis of the principles of estoppel, my view would be that the letter, the only act of the executor on which the estoppel is based, should not be held to estop him from setting up the claim for payment of the amount then due from him.

Before giving the letter any such effect, it should be shown, I think, that the attention of the executor was directed to the matter of the amount of the assignment to be made. This might have called to his attention the question of the effect of it on the claim of his estate, which seems to have escaped his attention and at the moment was not recalled "as a paper affecting George's interest in the estate." The Bernheim claim, for which the money was to be raised, was under $7,000, and there was no apparent reason for referring to the estate's claim for $5,000, even if it was in the executor's mind. But as the letter itself shows, the claim on the note, whether from carelessness or want of recollection, was not at the time considered as a paper or notice of the kind about which information was desired.

As to the second assignment made in March, there can certainly be no basis for holding the executor to be estopped. Had

an inquiry been made of him before this advance, he might have recalled and mentioned the claim. To hold him bound by estoppel for all future transactions between George and those with whom he dealt, on the basis of this letter and without further inquiry from the trustee, would stretch the principles of estoppel beyond all reason. But, without placing the decision upon this point, my view in reference to the whole question of estoppel is, that the executor, who was acting merely as trustee, has no authority either in George's favor or that of his assignee, to estop himself as trustee from afterwards asserting the rights of a trustee in the administration of the estate, and that any waiver of the right to deduct from George's share the amount improperly advanced from the estate funds would of itself operate to assist in a breach of trust. Such breach of trust could not have been properly effected, even by a direct agreement between the trustee and George or his assignee. Nor would this court ratify or carry into effect any such agreement. Much less could it be effected by the application of the doctrine of estoppel. Equitable doctrines are established for the purpose of enforcing equities, not to destroy them. If there was any misrepresentation in the letter of the complainant, or any failure, through negligence, carelessness or otherwise, to assert the claim of the estate to deduct the $5,000 loan from George's share, for which misrepresentation or failure the writer of the letter was responsible to the finance company, the writer was responsible only personally. The estate in the executor's hands was not and could not be bound by way of estoppel, not to assert its rights against George, and it cannot be made to suffer for the executor's letter to George. Other persons than George and the executor are interested in the retention and have never waived their right to it, and as now representing all persons interested in the estate, the executor is entitled to deduct the amount due on the loan to George before making payments under any of the assignments.

*Second.* I come now to the principal question, that relating to the priorities as between the assignees of the fund.

In its general aspect, the question involved is that of priority between successive assignees of a legacy or equitable interest, when the assignee prior in point of time has omitted to give no-

tice to the trustee of the assignment by the *cestui que trust* or beneficiary, and the beneficiary has made subsequent assignments of the same interest to assignees in good faith and for value, without notice of the prior assignment, and the subsequent assignees have themselves successively given notice to the trustee of their respective assignments. This general question of the necessity of notice to the trustee in order to preserve priority against subsequent assignees in good faith, is one of great practical importance, and of wide scope, inasmuch as it involves the settlement by the court of equity of the formalities or rules (if any) necessary to be observed in order to retain the full benefit of the acquisition of a species or class of property which the court itself has created as being *equitable* interests, and has also invested with the character of assignability. Legal estates and interests in chattels or lands are assignable by rules fixed either by common law or statute, and one of the principal objects of the recording acts is to regulate the priorities between successive grantees or mortgagees. In the absence of statute, the general rule applicable to such priorities is the fundamental maxim relating to the transfer of the title to property—*"Qui prior est tempore potior est jure."* As to equitable interests and estates in lands (strictly socalled), there is no question, I think, that so far as they are not within the recording or other statutes, equity follows the same general rule. The equitable doctrine of notice is not applicable to the conveyance of equitable interests or estates in lands. *Jones* v. *Jones (Vice-Chancellor Shadwell)*, 8 Sim. 633; *Hopkins* v. *Hemsworth (Justice Kekewich, 1898)*, 2 Ch. 347, 351; 2 Pom. Eq. Jur. (3d ed.) § 683, note (2), § 713. Where the assignments are of legacies, which are in their origin purely equitable interests (*King* v. *Berry (Chancellor Vroom, 1834)*, 3 N. J. Eq. (2 Gr. Ch.) 44; *Kennedy* v. *Parke (Green, Ordinary, 1864)*, 17 N. J. Eq. (2 C. E. Gr.) 415), or of funds in the hands of trustees, or like purely equitable interests, much discussion has arisen in reference to the effect of failure of notice by the prior assignee, and the rule to be established in such case as well as to the equitable principles upon which it should rest. These discussions have occurred in a great variety of cases—sometimes where the precise question of priorities now involved has not been

involved, and as decisions, the opinions are *obiter dicta.* Such cases are those where the question arose between the prior assignee and the trustee who had made payments from the fund either to the assignor or a subsequent assignee, without notice of the prior assignment. In this case there is, I think, no difference of opinion that the trustee paying without notice is protected. In others, the subsequent assignee was a claimant whose only right was that of the assignor and who stood exactly in the shoes of the assignor, subject to his equities, *e. g.,* a judgment or attachment creditor, or assignee under insolvent laws or other involuntary assignments for the benefit of creditors.

As to these, also, while there is some difference of opinion, the clear weight of authority is, I think, that the prior assignment, so far as the assignor and such adverse claimants under him are concerned, is complete and effective without notice, and the claimant by the subsequent assignment, whose estate is necessarily, by the circumstances of its creation, only that of assignor, is also subject to the prior assignment. This is the rule settled in our courts. *Board of Education* v. *Duparquet* (*Vice-Chancellor Pitney, 1892*), *50 N. J. Eq. (5 Dick.) 234, 242; approved in Miller* v. *Stockton* (*Court of Errors and Appeals, 1905*), *64 N. J. Law (35 Vr.) 614, 622; Cogan* v. *Conover Manufacturing Co.* (*Court of Errors and Appeals, 1905*), *69 N. J. Eq. (3 Robb.) 809.*

The real difference of opinion in the courts arises when the subsequent assignees claim to stand upon a footing which gives rise to the application of what is claimed to be a special and peculiar equitable principle, as against the prior assignee who has failed to give notice.

The special equity now alleged to exist against the prior assignee is one claimed to arise by reason of his conduct in failing to give notice, and in the consideration of the question those cases in which some further special circumstances existed giving rise to equities in favor of the subsequent assignee, other than the mere failure to give notice, may be treated as not decisions on the question in hand.

The division of opinion among courts and judges as to whether any special equity arises from this mere failure to give

notice, is very great. One set of courts follows what is some-
times called the English rule, that the special equity does exist
and that notice of the assignment to the trustee is necessary in
order to preserve priority. These include the United States su-
preme court—Iowa, Missouri and Pennsylvania. Courts in
which the general rule that priority in time gives priority in
right, seems to have been adopted, are, among others, those of
Indiana, Kentucky, North Carolina, Massachusetts and New
York. In several states both rules seem to have been applied
at different periods, and it is only in the later decisions that
the question has been finally settled in the respective jurisdic-
tions. A collection and analysis of the English and American
cases is given in *66 L. R. A. 760, &c.,* in a note to the case
*Re Phillips (1903), 205 Pa. 515,* in which it was held that as
between successive assignments of a fund in the hands of a
third person, the one which, being acquired without notice of
prior assignments, is first brought to the knowledge of the de-
positary is entitled to priority. Other collections of the cases
are *2 Am. & Eng. Encycl. L. (2d ed.) 1077; 4 Cyc. 77, note 82,*
and *19 Yale Law Jour. 253, February, 1910,* on "Notice of As-
signments in Equity," by E. Q. Keasbey.

In this state of the authorities, I shall not examine any of
the cases in detail, except the English cases, where the doctrine
of notice originates, and those in our own courts. Counsel upon
both sides rely upon decisions of our own courts as settling the
question in favor of their respective contentions and an ex-
amination of these at some length will therefore be necessary.

In the leading English case, *Dearle* v. *Hall (Plumer, M. R.,
1827), 3 Russ. 1,* where the doctrine of priority according to
notice was first laid down, the grounds were stated, and one of
these grounds (for two or three are given) is the ground upon
which the rule has been finally rested in England and those
courts which adopt the same rule. In this case, set out fully in
*2 Pom. Eq. Jur. § 695, note 1,* the beneficiary of a sum of
money invested in the name of trustees assigned it for value
to the complainant, who gave no notice of the assignment to
the trustee. Subsequently the beneficiary assigned his interest
in the fund to another purchaser, who purchased in good faith

and inquired of the trustee, as to any prior encumbrance or sale before making the purchase. The second assignee gave notice of his assignment. The bill was filed by complainant as prior assignee against the trustee and the second assignee, the trustee not having paid the beneficiary or either of the assignees. The case was twice argued, and the master of the rolls in the course of his opinion referred to several considerations as grounds or reasons for preferring the subsequent assignee with notice to the prior assignee who had neglected to give notice. One of these was that if the purchaser of an equitable interest desired to have his right under his purchase to attach upon the subject of the contract instead of being merely a contract personally binding the assignor, notice to the trustee must be given. Unless such notice be given, all was not done which was essential in the transfer of title to personal property, as under the law of England personal property passes by delivery of possession, and it is possession which determines the apparent ownership. If, having the right of possession, this right is not exercised and another is left in actual possession, he is enabled to obtain a false and delusive credit and to obtain money from innocent parties on the faith of ownership of that which belongs to the first assignee. Choses in action and equitable interests in funds held by another do not admit of tangible actual possession on transfer of title, but the purchaser of such property must do everything toward acquiring possession which the subject-matter will admit of, and notice to the debtor or trustee is for many purposes tantamount to possession. The effect of failure to give notice is that the assignee "is guilty of the same degree and species of neglect as he who leaves a personal chattel to which he has acquired a title in the actual possession and under the control of another person." In subsequent cases which followed the rule of *Dearle* v. *Hall,* it became essential to define with particularity the equitable grounds upon which the cases rested, and in *Ward* v. *Duncombe,* a house of lords case *(1893), App. Cas. 369,* all of the previous decisions were subjected to a vigorous and searching analysis by able counsel and by Lord Chancellor Herschell and Lord Macnaughten. Sir John Rigby, for the appellants, relying on some expressions in *Dearle* v. *Hall,*

insisted that the real equitable basis of the priority by notice was its effect as operating on the fund or res in the hands of the trustee, and thus making a trustee for the assignee instead of the assignor. But Lord Herschell, after a careful examination of this opinion of the master of the rolls in *Dearle* v. *Hall* and of that of Lord Chancellor Lyndhurst on appeal, which substantially concurred in all the reasons given by the master of the rolls, says (at *p. 378*) :

"It is impossible, I think, to read these judgments without seeing that the leading consideration which induced the court to lay down the rule that he who gives notice has a better equitable right than a prior encumbrancer who has given no notice, was this, that any other decision would facilitate fraud by the *cestui que trust* and cause loss to those who might have used every precaution that was possible to ascertain, before parting with their money, that the title they were taking was a valid one, and who might have done everything they could to render that title secure. It is true that reference was made to the fact that the party giving notice had done all that was necessary to perfect his title, whilst he who had not given notice had not perfected it. But even here, I think the point upon which stress was laid was this, that the party giving notice had taken the property out of the apparent ownership and possession of the *cestui que trust*."

A case in the house of lords subsequent to *Dearle* v. *Hall* was *Foster* v. *Cockerell (1835), 3 Cl. & F. 456,* and this was referred to as having finally settled the rule that as to choses in action and such interests in land as can only reach the beneficiary in the shape of money, priority of notice determines the title. And as to this case, it is said that Lord Lyndhurst, in delivering the opinion, puts in the forefront as the ground of the decision in *Dearle* v. *Hall,* the apparent possession left in the *cestui que trust* which enables him to commit a fraud. Lord Macnaughten in examining *Dearle* v. *Hall,* says that the master of the rolls on the first hearing relied principally on the ground of the fault of the first assignor in not giving notice, which caused the mischief complained of, but that in the second hearing this consideration was fortified by others of more or

less weight and by analogies more or less perfect and incomplete. These were that notice to the holder of an equitable fund was tantamount to possession, and that notice to the trustee charged him with responsibility to the giver of the notice, and that everything must be done toward giving possession that the subject admitted of. Lord Macnaughten was inclined to question the convenience of the rule in *Dearle* v. *Hall* and was not disposed to extend it, but in view of the fact that it had remained unaltered for sixty years, considered it beyond the power of the court to alter.

*Ward* v. *Duncombe* seems to have settled that the basis of the rule in *Dearle* v. *Hall* was the consideration of the effect of negligence or default in the prior assignee in not giving notice to the trustee. This neglect left the assignor as still the apparent owner of the fund, which might be used by him to perpetuate a fraud on subsequent purchasers or encumbrancers which they would have no means of protecting themselves against, and the fraud if committed was thus due to neglect. This is the substantial ground, I think, now adopted by all the courts which adhere to the rule as its true equitable basis, the other considerations mentioned in *Dearle* v. *Hall* not being relied on to any extent, and the difficulties and complications resulting from the priority being put on the grounds of notice as necessary for perfection of title, or of constituting the trustee a trustee for the assignor, probably make these grounds untenable. To the learned discussions in the cases I will add only one suggestion in favor of the English rule. The assignability of equitable interests is a purely equitable doctrine and seems to be based on the view that free transfer ought to be an essential right of the owner of equitable interests. The value of this transferable right will be substantially impaired in the hands of the transferrer unless the transferee can be protected by the exercise on his part of reasonable and ordinary diligence. If such transfer is to be subject to prior transfers of which neither the trustee nor subsequent transferee has notice, and of which the assignor is the only party to the transaction who has knowledge, the purchaser of the interest must for his protection against prior transfers depend wholly on the honesty of the

assignor and cannot fortify his judgment in making the purchase by any inquiries. This condition necessarily affects unfavorably the general status of the value of equitable interests for purposes of transfer, and to that extent, the right of transfer. The extent and necessity of assignments of such interest has become so great in the transactions of modern business, that purchasers in good faith and exercising due care must be protected, if the full or reasonable value of the interests is to be utilized.

Several decisions in this state are relied on as giving priority to successive assignments in order of time, but on examination I think it will be found that the status now in question was not directly or fairly involved. *Kennedy, Exr. of Luse,* v. *Parke (1864), 17 N. J. Eq. (2 C. E. Gr.) 415,* is usually cited as first establishing this rule. This was a petition in the orphans court, filed against the executor under the statute for the recovery of a legacy. The petition was filed by an assignee of the legacy, and the assignee and the executors were the sole parties to the action brought under the statute of 1855. *P. L. 342 § 17; Gen. Stat. 2393, ¶ 165.* The defence set up by the executor was payment of the legacy to a subsequent assignee without notice of the prior assignment. It was found by Ordinary Green (at *p. 418*) that the money was not in fact paid by the executor to the subsequent assignee until after notice. The learned ordinary in reference to the validity of the defence, if made out, said (at *p. 417*):

"It was held by the chancellor in *King* v. *Berry (Chancellor Vroom, 1834), 3 N. J. Eq. (2 Gr. Ch.) 54,* that a claim to a legacy is essentially an equitable, not a legal claim, and that the assignment must pass the whole right of the assignor; that there does not remain in the assignor after the assignment of a legacy, a distinct subsisting right, capable of being assigned, but that the entire interest passes. Recognizing this principle, it is difficult to perceive how any interest, legal or equitable, could have passed by the second assignment, or how the payment of the legacy to a party having neither a legal nor equitable title to it can constitute a good defence to the action."

This statement was rested on the decision in *King* v. *Berry,* which was a bill by the assignee of a legacy against the executor to recover the legacy, and on final hearing the question was raised, whether to such a bill the legatee and assignor was a necessary party. No suggestion of any other assignment was made, and manifestly, decree against the executor in favor of the assignee and payment of the decree without notice of any other assignment, absolved the executor absolutely. The question of priorities was not involved, and the learned ordinary in saying that under *King* v. *Berry* (which was a mere rule of practice as to parties) payment by an executor or trustee to a subsequent assignee, even if there had been no notice of the prior assignment "would not be a good defence to the action," must be fairly taken to have meant not a good defence to the statutory action in the orphans court against the executor. For that it is a good defence in equity, is, I believe, held by all courts, and as showing that he did not intend to pass upon the difficult question of priorities between successive assignees as effected by notice, a question which was not discussed or touched in the decision, the learned ordinary further said (at *p. 417*) : "It would seem that if the executors have any defence upon this ground, it is purely an equitable defence and available only in a court of equity." And as bearing upon his intention to decide this equitable question, it should be recalled, that in the earlier case (*Superintendent of Public Schools* v. *Heath (1862), 15 N. J. Eq. (2 McCart.) 27*), he had himself, as chancellor, in settling the claims of successive assignees of a chose in action, applied the doctrine of priority according to notice. He certainly did not intend to qualify in any way this well considered case. The circumstances of the case and the scope and express limitations of the decision were such that I do not think it can be taken as considering, or as intending to decide, the question now in hand, or as controlling the present case. *Kamena* v. *Hulbig (Chancellor Zabriskie, 1872), 23 N. J. Eq. (8 C. E. Gr.) 78,* is the next case relied on. This was a foreclosure bill by an assignee of a bond and mortgage, in which the mortgagor set up and claimed credit for partial payment to a prior assignee of the mortgage. The subsequent as-

signment was made before this payment, but while the bond and mortgage were in the hands of the prior assignee, and the second assignment was recorded before the payment. The payment by the mortgagor after the assignment was a payment to the prior assignee of the amount for which he held the bond and mortgage as collateral security, and this amount was still due at the time of the second assignment. The chancellor said (at *p. 80*), "that the fact that the mortgagee did not have them (the bond and mortgage) to deliver at the assignment to the complainant was notice that they were held by some one as owner or claimant." He further said:

"But no notice to him was required; he took them subject to all equities in this respect, that the title acquired by complainant was such as his assignor had at the time, that is, subject to the pledge, and that by the payment of the debt for which it was pledged the mortgagor stood in the place of the pledgee, as her assignee in equity, and the complainant had no right in law or equity to any benefit from the payment."

If the case be considered as one involving the priorities of successive assignees of a mortgage as an equitable interest or lien in lands, then the doctrine of notice has no application. *2 Pom. Eq. Jur.* §§ *685, 713.* There was no discussion whatever of the question now involved nor any reference to authorities, nor was it necessary for the decision, which is plainly to be supported upon the ground of notice and bad faith in the second assignee, if the case be treated as the assignment of a chose in action. The second mortgagee had constructive notice of the prior equitable assignment. *Spencer* v. *Clarke (Vice-Chancellor Hall, 1878), 9 Ch. Div. 143; In re Werniger's Policy (Mr. Justice Porter, 1910), 2 Ch. 291.*

The other cases relied on are: *Board of Education* v. *Duparquet (Vice-Chancellor Pitney, 1892), 50 N. J. Eq. (5 Dick.) 234; Miller* v. *Stockton (Court of Errors and Appeals, 1900), 64 N. J. Law (35 Vr.) 614, 622; Cogan* v. *Conover Manufacturing Co. (Vice-Chancellor Garrison, 1905), 69 N. J. Eq. (3 Robb.) 358, 372; on appeal, Ibid. 811; United States Fidelity and Guarantee Co.* v. *Newark (Vice-Chancellor Howell, 1909), 76 N. J. Eq. (6 Buch.) 230.*

All of these are cases where the question of priority arose between prior assignees who had failed to give notice and subsequent claimants under the debtor standing in the relation of creditors under statutory liens and by involuntary assignment of the debtor's rights. As decisions upon the present question, these are plainly not controlling.

On the other hand, several decisions are relied on by counsel as affirming the rule of priority according to notice. These all relate to the successive assignments of choses in action, which, so far as requiring notice is concerned, are to be treated as standing upon the same footing as the assignments of equitable interests in money in the hands of trustees. Both are personal equitable rights of action, as distinguished from liens and other equitable interests in lands. *2 Pom. Eq. Jur.* § *713.* The leading case is *Superintendent of Public Schools* v. *Heath (1862), 15 N. J. Eq. (2 McCart.) 22.* In this case, Chancellor Green settled the rights of claimants to an amount due on a building contract by the complainant, which was paid into court on an interpleader. The question principally discussed here was as to the preference claimed between certain classes of creditors—*first,* those claiming the fund under notices given under the Mechanics' Lien law, and *second,* those claiming under orders for payment out of the fund given by the debtor, and as to the latter class, also *third,* the question was raised whether preference should be given to those creditors whose orders were given for debts incurred on the building, over those whose debts were contracted on other accounts. The decision was that there was no preference of either one of these three classes over the other, that all the claimants, in whatever class, were to be paid according to the priority of their respective orders or notices. The direction is (at *p. 30*), "Each creditor is entitled to be paid in the order in which his notice or order was presented to the complainant." As to the claimants under lien law notices, the statute expressly requires notice to the owner in order to complete the lien, but as to the priorities under orders, the general rules of equity control. The priority as between claimants under orders does not seem to have been taken to depend on any circumstances in the case except the respective dates of notice, and it may have been, as suggested by

Vice-Chancellor Pitney in *Board of Education* v. *Duparquet,* *supra* (at *p. 243*), that the orders were all presented in the order of their respective dates. Although, therefore, this general direction has controlled the practice in subsequent similar cases, the case cannot be considered as of itself controlling the present case. In *Shannon* v. *Hoboken (1883), 37 N. J. Eq. (10 Stew.) 123,* affirmed on appeal for reasons stated below, Vice-Chancellor Van Fleet (at *p. 127*), adopts the rule of priority laid down in the *Heath Case,* but it appears by the case that the conflict was between claimants under orders which were presented on or shortly after their dates, and subsequent claimants under lien law notices, so that no occasion for the discussion of the present question arose. In other cases cited, the prior assignee had in fact given notice of his assignment, and the effect of the general statement of the rule as to priorities made in some of the opinions, made without any special discussion, is qualified by this fact. Among these are *Kirtland* v. *Moore (Vice-Chancellor Van Fleet, 1885), 40 N. J. Eq. (13 Stew.) 106; Bank of Harlem* v. *Bayonne (Vice-Chancellor Green, 1891), 48 N. J. Eq. (3 Dick.) 246, 252,* affirmed on appeal for reasons stated, *Ibid. 646.* Considering the effect of all the decisions in our own courts up to the present time, to which I have been referred or which I have found, I reach the conclusion that in none of them has the precise question now in dispute been directly involved, considered and decided, and that the decision of the question is not controlled by precedents heretofore established.

Considering the question as here *res nova* and to be settled on principle, I think the sound equitable rule is that notice by a prior assignee to the trustee is necessary in order to protect him against a subsequent assignee who is a purchaser for value in good faith and without notice. The equitable ground upon which the rule rests is the one adopted finally and after much discussion, viz., that the failure of the prior assignee to give notice is a negligence which leaves the assignor in a position where by his apparent ownership he is able to deal with the property in a manner to defraud or injure any subsequent purchaser notwithstanding all due inquiry made.

Placed upon this ground of negligence, the doctrine of notice, as applied in this case, would seem to afford a further illustration of the general principle as to notice stated by Mr. Justice Garrison in *Fisher* v. *Bull,* 52 *N. J. Eq.* (*7 Dick.*) *298, 309,* that "at bottom the doctrine of notice is part of the law of negligence."

It has not been disputed in the case that all of the subsequent assignees were purchasers for value and without notice of the previous assignment to L. F. Robertson & Sons.

On behalf of the defendant Bernheim, two further objections were raised to the claim of L. F. Robertson & Sons. First, that their assignment was not an assignment effecting a present transfer of an interest in the fund, but a mere order to pay a specific sum of money out of that interest, and which was not effective until presented to the executor or trustee of the fund. This objection is not well founded in fact, as the document contains the clause: "I hereby assign, quitclaim and release so much of my interest in said estate as may be necessary to pay said claim of $4,000 with any accrued interest." This clause follows the order on the estate to pay. As appears by the proofs this assignment was executed and delivered to the assignee on May 14th, 1901. It was, however, then dated "Feb. 1, 1906," being the date on which George's $30,000 legacy and his share in the estate was payable if he survived. The assignee received at the same time as further security policies of insurances on George's life. The document as an assignment was intended to be effective from the date of delivery, but the payment was not to be made until the date fixed by the order.

A further objection was made that the present defendant "L. F. Robertson & Sons;" a corporation subsequently formed, had not shown title to the assignment which was made to the firm of "L. F. Robertson & Sons." No written assignment from the firm to the corporation has been produced, but due proof has been given that it was made, and cannot now be found, and that this claim against George B. Jenkinson was part of the assets of the firm, in fact taken over by the corporation. An assignment of the claim against Jenkinson is valid by a delivery of the evidences of debt without writing, and the security would in equity follow the claim.

I will advise a decree settling the priorities on the above basis, and on the settlement of the decree will hear parties interested on the question of interest, if desired.